1

2  **UNITED STATES DISTRICT COURT**

3  **DISTRICT OF NEVADA**

4

5  DANIEL HASTINGS PITCHER,     )
                                 )      3:05-CV-0499-JCM (VPC)

6            Plaintiff,        )
                                 )

7        vs.                )      <u>**REPORT AND RECOMMENDATION**</u>
                                 )      <u>**OF U.S. MAGISTRATE JUDGE**</u>

8  THE WACKENHUT CORP., *et al.*;     )
                                 )

9          Defendants.      )      July 10, 2007
  _____)

10

11      This Report and Recommendation is made to the Honorable James C. Mahan, United

12  States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to

13  28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is plaintiff's renewed motion for

14  summary judgment (#44).  Defendants opposed (#49) and plaintiff replied (#52).  Also before the

15  court is defendants' motion for summary judgment (#45).  Plaintiff opposed (#41).  The court has

16  throughly reviewed the record and the motions and recommends that plaintiff's renewed motion

17  for summary judgment (#44) be denied.  The court further recommends that defendants' motion

18  for summary judgment (#45) be granted in part and denied in part.

19                  **I. HISTORY & PROCEDURAL BACKGROUND**

20      Daniel Hastings Pitcher ("plaintiff"), a *pro se* prisoner incarcerated at Lovelock

21  Correctional Center ("LCC") in the custody of the Nevada Department of Corrections ("NDOC"),

22  filed his amended complaint on May 2, 2006 (#18).  Plaintiff brings his complaint pursuant to 42

23  U.S.C. § 1983, alleging violations of his Fourteenth Amendment right against punishment without

24  due process of law.  *Id.*  Plaintiff names as defendants the Wackenhut Corporation

25  ("Wackenhut"); Gary Lancaster, a Wackenhut employee; and Willy Jolly, a Wackenhut

26  employee.[1]  *Id.*

27  _____

28       [1] Plaintiff originally named the Washoe County District Attorney as a defendant in the suit.  On May 2, 2006, the court granted plaintiff's motion to strike defendant District Attorney, *see* #14, and granted plaintiff leave to amend his complaint (#17).

1    In count I, plaintiff alleges defendants Lancaster and Jolly violated his Fourteenth

2 Amendment right to be free from punishment without due process of the law by subjecting

3 plaintiff to excessive heat with inadequate restroom stops during a cross-county prison bus

4 transport, by denying him his personal hygiene items, and by denying him adequate food (#18 at

5 4). Plaintiff further alleges in count I that defendant Lancaster violated plaintiff's Fourteenth

6 Amendment right by refusing to provide him with proper medical care. *Id.* Finally, plaintiff

7 alleges in count I that defendant Wackenhut is vicariously liable for the actions of defendants

8 Lancaster and Jolly. *Id.*

9    The following facts are uncontested unless noted otherwise. In 2003, plaintiff was

10 arrested and arraigned for theft of a motor vehicle in Washoe County. He was released on bail

11 and fled the jurisdiction. Plaintiff was arrested in New York for unrelated crimes, sentenced and

12 convicted. After his New York prison term ended, plaintiff was rearrested and held for

13 extradition to Nevada. The Washoe County Sheriff's Office hired the Wackenhut Corporation

14 to retrieve plaintiff and deliver him to Nevada (#45-3 at 36). On June 4, 2005, defendants

15 Lancaster and Jolly picked up plaintiff at the Franklin County Sheriff's Office in Malone, New

16 York (#45-2 at 3). Plaintiff testified at his deposition that while confined in New York, he was

17 on a 3,000 calorie per day diet, that he is hypoglycemic, and that he occasionally requires glucose

18 pills (#45-3 at 16). Plaintiff further testified that he informed defendants Lancaster and Jolly of

19 these facts. *Id.* at 18. Defendant Lancaster stated in his affidavit that the Franklin County

20 Sheriff's Office informed neither he nor defendant Jolly that plaintiff required a special diet or

21 glucose pills (#45-2 at 3).

22    From June 4, 2005 to June 10, 2005, plaintiff rode the transport van, stopping nightly at

23 local jails. Plaintiff testified that the air conditioning in the van could not reach the prisoner

24 transport area because the driver's cab is separated from the transport area by plexiglass (#45-3

25 at 8). Plaintiff testified that the temperature inside the back of the van exceeded 100 degrees at

26 times, and he knew it was over 100 degrees because he had been in 100 degree weather before

27 and knew what it felt like. Plaintiff further testified that he had to urinate in a cup on at least two

28

1  occasions because defendants Lancaster and Jolly would not stop for restroom breaks (#45-3 at

2  12).  During this portion of the trip, the travel log indicates that the van stopped an average of

3  once a day for bathroom breaks (#45-4 at 7-15).  Defendant Lancaster stated in his affidavit that

4  plaintiff requested to use the bathroom every thirty to forty-five minutes.  Plaintiff also alleges

5  that during this portion of the trip he did not receive adequate food (#18 at 4).  Wackenhut's

6  transport policy requires that transportees receive three meals a day, at least two of which are hot

7  (#44-5 at 15).  Defendants' food log indicates that plaintiff received two meals a day, each day,

8  during the trip (#45-4 at 4-6).  Plaintiff testified that these meals consisted of a small, plain

9  hamburger, an order of small french fries, and a small drink (#44-2 at 36).

10  On June 10, 2005, plaintiff was booked on a courtesy hold in Raleigh, North Carolina and

11  remained in the Raleigh jail until June 18, 2005.  Plaintiff alleges that while at the Raleigh jail,

12  jail personnel denied him basic hygiene items including a toothbrush, soap, and showers (#18 at

13  4).  Plaintiff testified he believes it was the responsibility of the local jails to provide him with the

14  hygiene supplies (#45-3 at 8).  Defendant Lancaster and a Jane Doe Wackenhut employee picked

15  up plaintiff from the Raleigh jail on June 18, 2005 (#45-2 at 4, 10).

16  From June 18, 2005 to June 21, 2005, plaintiff rode the transport van.  During this time,

17  plaintiff complained about feeling ill (#45-3 at 11).  Plaintiff made his initial complaint on June

18  19, 2005, and he made numerous complaints from that time forward.  *Id.*  Plaintiff testified that

19  his side was sore, he was shaking and stuttering, and that he felt like he was freezing.  *Id.* at 12.

20  Plaintiff testified that defendant Lancaster gave him his jacket in response to his complaints.  *Id.*

21  Plaintiff further testified that defendant Lancaster repeatedly informed plaintiff that he would

22  receive medical attention when the transport reached Colorado.  *Id.*  At some point during the trip

23  from North Carolina to Colorado, plaintiff testified a fellow transportee was hospitalized for

24  dehydration.  *Id.*

25  On June 21, 2005, the van arrived in Colorado Springs, Colorado.  *Id.*  Plaintiff testified

26  that he expected to remain in Colorado Springs to receive medical attention, but defendant

27  Lancaster informed plaintiff that he was returning to "Michigan, or some place like Michigan"

28  on the van.  *Id.*  In response to defendant Lancaster's insistence that plaintiff return to the van,

3

1   plaintiff testified he sat on the ground. *Id.* Defendant Lancaster called the local police and

2   plaintiff was forcibly returned to the van and placed in a solitary seat in the front of the prisoner

3   transport area. *Id.* at 12-13. Defendant Lancaster testified that he did not believe plaintiff was

4   actually ill (#45-2 at 29). Plaintiff apparently became extremely agitated, and kicked the food slot

5   to his seat open (#45-2 at 29; #45-3 at 13). Defendant Lancaster stated in his affidavit that he

6   stopped the van and called the local police because he was afraid plaintiff would kick a window

7   out (#45-2 at 29). Plaintiff's testimony also reflects that the local authorities were called (#45-3

8   at 13). According to plaintiff's testimony, in response to plaintiff's complaints, the police had the

9   van follow them to the local jail, where plaintiff was booked on a courtesy hold. *Id.* Plaintiff

10  received medical treatment for bladder and kidney infections, dehydration, a fever of 103.4

11  degrees, and for two-and-a-half inch wide sores on his buttocks (#51 at 37-39). Plaintiff also lost

12  fifteen pounds in the eighteen days between leaving New York and arriving in Colorado (#44-4

13  at 17; #45-3 at 36).

14      On June 25, 2005, defendant Lancaster and the Jane Doe employee picked up plaintiff

15  again, and they delivered him to the custody of the Washoe County Sheriff's Office on June 26,

16  2005 (#45-2 at 5, 14).

17      The court notes that the plaintiff is proceeding *pro se*. "In civil cases where the plaintiff

18  appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit

19  of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see*

20  *also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

21                      **II. DISCUSSION & ANALYSIS**

22      **A. Discussion**

23          **1. Summary Judgment Standard**

24      Summary judgment allows courts to avoid unnecessary trials where no material factual

25  disputes exist. *Northwest Motorcycle Ass'n v. U.S. Dept. of Agriculture*, 18 F.3d 1468, 1471 (9th

26  Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in

27  dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(C).

28  In deciding whether to grant summary judgment, the court must view all evidence and any

                                    4

inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In inmate cases, the courts must

> [d]istinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, __ U.S. __, 126 S.Ct. 2572, 2576 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**B. Analysis**

**1. State Action Requirement in Section 1983**

Defendants first argue that the Wackenhut Corporation and its employees are not "state actors" within the meaning of section 1983, because there was minimal connection between the Washoe County Sheriff's Office and defendants (#45-1 at 8). Plaintiff contends that defendants entered a contractual relationship with the Washoe County Sheriff's Office, thereby becoming state actors (#52 at 2).

To recover for a constitutional violation under 42 U.S.C. § 1983, a plaintiff must demonstrate that there was a deprivation of a constitutional right and that the deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

5

The traditional definition of acting under color of state law requires the "defendant to have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 49 (citing *United States v. Classic*, 313 U.S. 299, 326 (1941)). The Supreme Court held in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) that if an action constitutes state action under the Fourteenth Amendment, it constitutes acting under color of state law pursuant to section 1983. *Id.* at 929. "In the typical case raising a state action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action." *Nat'l Collegiate Athletic Ass'n. v. Tarkanian*, 488 U.S. 179, 192 (1988).

The Supreme Court has established four distinct tests to determine whether state action exists: public function, state compulsion, governmental nexus, and joint action. *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996) (citing *Lugar*, 457 U.S. at 939). "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003) (citing *Lee*, 276 F.3d at 554). The public function test holds that "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Evans v. Newton*, 382 U.S. 296, 299 (1966). "To satisfy the public function test, the function at issue must be both traditionally and exclusively governmental." *Lee v. Katz*, 276 F.3d 550, 555 (9th Cir. 2002) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 842 (1982)). However, "[c]onstitutional standards should be invoked only 'when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains.'" *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002) (citing *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n.*, 531 U.S. 288, 295 (2001) (quotations omitted) (emphasis in original)).

Here, the Washoe County Sheriff's Office hired the Wackenhut Corporation to pick up plaintiff and bring him to Nevada for trial (#45-3 at 36). Bringing an individual charged with a crime into custody is traditionally a governmental function. *See West v. Atkins*, 487 U.S. 42, 54-56 (1988) (holding that a doctor under contract with the state, who gave prisoner deficient medical

1   treatment, was a state actor under the public function test).  Plaintiff could have stated a section

2   1983 cause of action for violation of his Eighth Amendment rights if Washoe County employees

3   had picked up plaintiff in New York and transported him to Nevada.  It would eviscerate the

4   protections of section 1983 to allow Wackenhut's employees to escape liability for violating

5   plaintiff's constitutional rights on the ground that they are not directly on the payroll of a state

6   entity.  There would be no remedy for constitutional violations, while confined at the direction

7   of the state, as long as the state delegates its duty to house pre-trial detainees and prisoners to a

8   private firm.  For these reasons, the court rejects defendants' argument that it and its employees

9   did not act under color of state law.

10                    **2. Conditions of Confinement**

11          Plaintiff appears to claim that the court must grant summary judgment in his favor,

12   because the facts demonstrate a *per se* violation of the Fourteenth Amendment (#44-1 at 9).

13   Defendants' view is that plaintiff suffered only *de minimus* inconveniences while riding the

14   transport van and that *de minimus* inconveniences do not rise to Eighth or Fourteenth Amendment

15   violations (#45-1 at 12).

16                         **(a) Law**

17          The Fourteenth Amendment prohibits "punishment" of pre-trial detainees without due

18   process of law.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  Whether the treatment of pre-trial

19   detainees is "punishment" in violation of the Fourteenth Amendment depends on whether prison

20   officials acted with deliberate indifference to the detainees' needs.  *Redman v. County of San*

21   *Diego*, 942 F.2d 1435, 1441-43 (9th Cir. 1991); *Hallstrom v. Garden City*, 991 F.2d 1473, 1485

22   (9th Cir.) (applying *Redman* to conditions of confinement claim).  Deliberate indifference requires

23   that prison officials be aware of facts that presented a substantial risk of harm to the inmate, and

24   recognize that the situation posed a substantial risk of harm.  *Estate of Ford v. Ramirez-Palmer*,

25   301 F.3d 1043, 1049-50 (9th Cir. 2002).  A finding that the defendant's activity resulted in

26   "substantial harm" is not necessary; the Eighth Amendment protects deprivations which result "in

27   pain and suffering for no legitimate penological purpose." *Wood v. Housewright*, 900 F.2d 1332,

28   1340 (9th Cir. 1990).

1    "Courts may not find Eighth Amendment violations based on the 'totality of conditions'

2   at a prison." *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982) (citing *Wright v. Rushen*, 642

3   F.2d 1129, 1132 (9th Cir. 1981)).   Each individual deprivation of food, clothing, shelter,

4   sanitation, medical care, or personal safety must amount to an Eighth Amendment violation in its

5   own right.  *Id.*   However, each individual condition can be evaluated in light of the other

6   conditions.  *Id.*

7                                              **(b) Analysis**

8                                         **(i) Inadequate Food**

9       Plaintiff alleges that during his transport from New York to Nevada he received only "one

10  plain burger, a small amount of fries and a small drink twice a day" (#18 at 4).   Defendants

11  respond that plaintiff cannot establish that defendants Lancaster and Jolly knew or should have

12  known of a serious risk of harm to plaintiff (#45-1 at 13).

13      The evidence indicates that, for the most part, plaintiff received two meals a day (#45-4

14  at 4-6).  Plaintiff testified that he was prescribed a 3000 calorie per day diet while confined in

15  New York (#44-4 at 18).  Plaintiff further testified that he informed defendants Lancaster and

16  Jolly that he was on a special diet and was hypoglycemic (#45-3 at 18).   However, defendant

17  Lancaster stated in his affidavit that he was not aware of plaintiff's hypoglycemia or his 3000

18  calorie per day diet (#45-2 at 3).  Although plaintiff alleges that he lost twenty four pounds, the

19  evidence reveals that plaintiff lost fifteen pounds between leaving New York and obtaining

20  medical care in Colorado (#44-4 at 17; #45-3 at 36).  Moreover, plaintiff suffered from kidney

21  and bladder infections, sores on his buttocks, dehydration and a fever of 103.7 degrees.  These

22  injuries are sufficiently serious to state a Fourteenth Amendment cause of action.   Thus, the

23  dispositive question is whether defendants Lancaster and Jolly were deliberately indifferent to

24  plaintiff's needs by serving him two meals a day, consisting of a plain burger, a small amount of

25  fries and a small drink.

26      The court finds that there is inadequate evidence in the record to establish whether or not

27  two meals of a burger, fries and a small drink is adequate food.  The defendants have not carried

28  their burden of proof on summary judgment.  A rational trier of fact could conclude that two

1    meals a day is inadequate and that defendants Lancaster and Jolly knew or should have known

2    that the meals were inadequate, in light of Wackenhut's policy requiring that transportees receive

3    three meals a day, at least two of which are hot (#44-5 at 15).  Likewise, regardless of defendants

4    Lancaster and Jolly's knowledge of plaintiff's dietary needs, plaintiff presents no evidence

5    regarding the number of calories in the meals and whether the amount was insufficient for

6    plaintiff.  Therefore, plaintiff also fails his burden of proof for summary judgment.  The court

7    finds that there is a genuine issue of material fact concerning the adequacy of plaintiff's diet while

8    in the custody of Wackenhut.  Summary judgment is denied as to plaintiff's claim of inadequate

9    food.

10                      **(ii) Conditions Inside the Transport Van**

11          Plaintiff alleges that he was placed in a "4'x5'x6' cage" inside the transport van, which was

12    enclosed with plexiglass, thereby preventing air conditioned air to reach him (#45-3 at 8).  He

13    testified that the temperature in the back of the van exceeded 100 degrees (#18 at 4).  Plaintiff

14    testified that he knew it was over 100 degrees in the van, because he knew what 100 degree heat

15    felt like.  *Id.*  Moreover, plaintiff testified that he was forced to urinate in soda cups because

16    defendant Lancaster refused to stop the van (45-3 at 10).[2]  The driving record indicates that the

17    van stopped for restroom breaks once a day from June 3, 4, 5, 6, 7, and 9, and twice a day on June

18    8 and 10 (#45-4 at 7-15).  The evidence indicates no stops for restroom breaks after June 10,

19    2005.  *Id.*

20          These deprivations are sufficiently serious to state a cause of action for cruel and unusual

21    punishment, or, in this case, punishment without due process of law.  The evidence in the record

22    demonstrates a set of facts substantially similar to the conditions alleged by prisoners in *Johnson*

23    *v. Lewis*, 217 F.3d 726 (9th Cir. 2000).  In *Johnson*, the court wrote:

24                plaintiffs provide sworn deposition testimony and affidavits that
                  they did not receive protection from the elements sufficient to
25                ward off heat-related illnesses. They testified that they received

26    _____

27          [2] Defendants analyze plaintiff's complaint concerning restroom stops separately from the conditions
      of transport; however, the court finds that urinating in a cup is more properly considered a part of the
28    conditions of transport rather than a separate claim.

> inedible food and inadequate drinking water for four days. They also testified that they did not receive adequate access to toilets to avoid soiling themselves, and they were not allowed to clean themselves thereafter. If believed, this evidence would establish deprivations sufficiently serious to satisfy the objective component of an Eighth Amendment claim.

*Id.* at 732. The deprivations, especially the allegation of dangerously high temperatures in the van, are sufficiently serious to meet the objective prong of the cruel and unusual punishment test. The court turns to whether defendants Lancaster and Jolly were deliberately indifferent to the risk of harm to plaintiff posed by these deprivations.

The affidavits and testimony indicate that there is a genuine issue of material fact whether defendants Lancaster and Jolly acted with deliberate indifference in ignoring a serious risk to plaintiff's health. When viewed in the light most favorable to the plaintiff, the evidence indicates that defendants Lancaster and Jolly knew the back of the van was enclosed with plexiglass, which prevented air conditioned air from reaching the transportees.[3] The evidence further indicates that defendants knew they were not stopping for restroom breaks, as defendants' travel log indicates infrequent or no restroom stops. A reasonable jury could conclude defendants acted with deliberate indifference to a serious risk of harm to plaintiff by subjecting plaintiff to extreme temperatures and no bathroom breaks. Summary judgment is denied as to plaintiff's claim concerning the conditions of confinement inside the van.

### (iii) Plaintiff's Medical Needs

The Eighth Amendment prohibits cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). To succeed on such a claim an inmate must meet both an objective and subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A "serious medical need," or the objective standard, exists if the failure to treat a prisoner's condition could result in further significant injury or the "unecessary and wanton

---

[3] There is no evidence in the record that plaintiff received any liquids during his time in the van other than the two small sodas plaintiff testified he received at lunch and dinner. However, plaintiff does not allege insufficient drinking water as part of his complaint.

infliction of pain." *Estelle*, 429 U.S. at 104.  The Ninth Circuit's examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic or substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).  The objective standard requires a showing that the deprivation was serious enough to amount to cruel and unusual punishment.  *Id.*

The subjective standard requires a showing that prison officials were "deliberately indifferent" to the inmate's safety.  *Id.*  "A prison official acts with deliberate indifference ... only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citing *Gibson v. County of Washoe*, 290 F.3d 1175 (9th Cir. 2002)).  To satisfy this standard the prison official must not only have known of facts that could give rise to an inference of excessive risk, but also must have drawn the inference.  *Id.*  This is a question of fact subject to proof in the usual ways, including presentation of circumstantial evidence which demonstrates that a prison official knew of the risk.  *Farmer*, 511 U.S. at 842.  "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In this case, on the eighteenth day after plaintiff left New York, he informed defendant Lancaster that he did not feel well for the first time (#45-3 at 11).[4]  Plaintiff admits that when he first complained of illness it was not pressing; however, plaintiff testified that for two days he repeatedly told defendant Lancaster and a Jane Doe Wackenhut employee that he did not feel well and that he was getting worse.  *Id.* at 11-12.  Plaintiff testified he was shaking and stuttering, and that defendant Lancaster and Jane Doe gave plaintiff his jacket shortly after the symptoms began.  *Id.*  Moreover, plaintiff testified that defendant Lancaster repeatedly told plaintiff he would get

[4] The court notes that Wackenhut has a policy which requires that no delivery of a transportee take more than five days (#44-5 at 18).  In this case, the delivery took twenty-four days.

11

1   medical attention as soon as they reached Colorado.  *Id.*  However, according to plaintiff's

2   testimony, when the transport arrived in Colorado, defendant Lancaster informed plaintiff he

3   would have to return to Michigan.  *Id.*  Plaintiff testified that he explained he needed to see a

4   doctor, but, when he realized he would not be allowed to see a doctor, he sat on the ground to

5   force defendant Lancaster to call the police.  *Id.*  With police aid, defendant Lancaster force

6   plaintiff back onto the van. *Id.* at 12-13.  Plaintiff continued to protest once back in the van, and,

7   eventually, defendant Lancaster called the police again.  *Id.* at 13.  The police took plaintiff to a

8   local jail for evaluation and treatment.  *Id.*  The medical reports completed at the Colorado jail

9   indicate that plaintiff suffered from kidney and bladder infections, sores on his buttocks two-and-

10  a-half inches in diameter, dehydration and a fever of 103.4 degrees (#51 at 37-39).  Defendant

11  Lancaster stated in his affidavit that he did not believe that plaintiff was actually in need of

12  medical attention (#45-2 at 29).

13      The injuries alleged and demonstrated by the evidence are such that "a reasonable doctor

14  or patient would find [them] important and worthy of comment or treatment."  *Lopez*, 203 F.3d

15  at 1131.  Meeting this standard satisfies the objective prong of an Eighth Amendment cause of

16  action for failure to provide adequate medical care.  *Id.*  Therefore, the court considers whether

17  defendant Lancaster acted with deliberate indifference.

18      The evidence before the court reveals a genuine issue of material fact as to whether it was

19  reasonable for defendant Lancaster to ignore plaintiff's repeated requests for medical care.

20  Although defendant Lancaster stated in his affidavit that he was unaware plaintiff was actually

21  ill, the evidence in the record is susceptible to the converse inference.  Defendant Lancaster gave

22  plaintiff his jacket after plaintiff repeatedly complained of illness; and, although some vexatious

23  behavior can be expected from persons in stressful situations, such as prisoners chained in the

24  back of a van, a reasonable jury could conclude that plaintiff's repeated requests warranted more

25  attention than they received.  Further, plaintiff's testimony that defendant Lancaster promised him

26  medical care in Colorado, but then demanded that plaintiff get back in the van and return to

27  Michigan, if accepted as true, demonstrates clear indifference to plaintiff's requests for medical

28  treatment.  Because a reasonable finder of fact could conclude that defendant Lancaster was

deliberately indifferent to plaintiff's medical needs, defendants fail to demonstrate the absence of a genuine issue of material fact concerning plaintiff's claim of deliberate indifference to his serious medical need. Summary judgment in favor of defendants is denied. Plaintiff has likewise failed his burden of proof, as defendant Lancaster's statements in his affidavit create a genuine issue of material fact concerning whether he knew plaintiff was ill. If defendant Lancaster was unaware plaintiff was ill, then he did not act with deliberate indifference. Therefore, summary judgment in favor of plaintiff is also denied.

### (iv) Plaintiff's Hygiene Items

Plaintiff alleges that defendants denied him access to his personal hygiene items (#18 at 4). However, plaintiff's allegations imply that defendants are responsible for prison officials' denial of hygiene items during the time plaintiff was booked on courtesy holds.

There is no vicarious liability in section 1983 actions. A person deprives another of a constitutional right for the purposes of section 1983 only if that person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which that person is legally required to do that causes the deprivation of which complaint is made." *Hydrick v. Hunter*, 466 F.3d 676, 689 (9th Cir. 2006) *quoting Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). There must be a causal connection by some kind of direct personal participation in the deprivation or by setting in motion a series of acts by other which the actor knows or reasonably should know would cause others to inflict the constitutional injury. *Id.*

Plaintiff does not allege that the defendants denied him any personal hygiene items while onboard the transport van. The only deprivations of hygiene items plaintiff referenced in his deposition occurred while he was held overnight at local jails (#45-3 at 8). It cannot be said that the defendants either did an affirmative act or failed to do an affirmative act, which directly caused the local jails to deny plaintiff his personal hygiene items. Plaintiff's argument that defendants are responsible because they chose the jails where he spent the night does not establish personal involvement by the defendants in depriving him of his personal hygiene items. Summary judgment in favor of defendants is granted as to plaintiff's claim concerning deprivation of personal hygiene items.

### 3. Wackenhut Corporation's Liability

As the court detailed above, there is no vicarious liability under section 1983.  Therefore, plaintiff's claims against the Wackenhut corporation fail, since plaintiff alleges affirmative violations against only defendants Lancaster and Jolly.  A corporation is not liable under section 1983 for the constitutional violations of its employees unless it established a policy which directly leads to the violations.  *See*, *e.g.*, *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (stating that "it is only when execution of a government's policy or custom inflicts the injury that the municipality as an entity is responsible).  Policies are "deliberate choice[s] to follow a course of action... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir.2002) (per curiam) (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir.1992)).

The evidence before the court indicates that Wackenhut had corporate policies in place prohibiting the treatment plaintiff endured (#44-5 at 10, 13).  Moreover, there is no evidence in the record that Wackenhut implicitly sponsors giving minimal food and restroom breaks, or denying medical attention to transportees.  Therefore, plaintiff's claims against the Wackenhut Corporation must be dismissed.

### III.  CONCLUSION

Based on the foregoing, and for good cause appearing, the court concludes that:

- There is inadequate evidence in the record to establish whether two meals consisting of a small hamburger, some fries and a small drink is adequate food, especially in light of Wackenhut's policy that three meals a day should be served;

- There is a genuine issue of material fact concerning whether defendants Lancaster and Jolly knew or should have known that the conditions of transport constituted punishment, because there was no air conditioning in the prisoner transport area and the van infrequently stopped for restroom breaks;

- There is a genuine issue of material fact as to whether it was reasonable for defendant Lancaster to ignore plaintiff's requests for medical attention, because plaintiff was given his jacket after complaining of illness, repeatedly complained of illness for two days and suffered from dehydration, a fever, a kidney and bladder infection and sores on his buttocks;

- Defendants cannot be held liable for the deprivation of plaintiff's personal hygiene items while plaintiff stayed at local jails out of the custody of defendants because

14

there is no vicarious liability for violations of section 1983; and

- Defendant Wackenhut Corporation is not liable for the acts of defendants Lancaster and Jolly, since there is no vicarious liability for violations of section 1983.

The court recommends that plaintiff's renewed motion for summary judgment (#44) be **DENIED**.  The court further recommends that defendants' motion for summary judgment (#45) be **GRANTED** as to defendant Wackenhut Corporation and plaintiff's claims of deprivation of personal hygiene items, and **DENIED** as to plaintiff's conditions of confinement during transport and plaintiff's request for medical attention.

The parties are advised:

1.    Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within ten days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.    This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's renewed motion for summary judgment (#44) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that defendants' motion for summary judgment (#45) be **GRANTED** as to defendant Wackenhut Corporation and plaintiff's claims of deprivation of personal hygiene items, and **DENIED** as to plaintiff's conditions of confinement during transport and plaintiff's request for medical attention.

**DATED:** July 10, 2007.

_____
**UNITED STATES MAGISTRATE JUDGE**

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28